IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EUPHORIA WELLNESS, LLC,<br><br>Defendants. | Case No. 3:20-cv-03297-CRB<br><br>**ORDER DENYING MOTION TO DISMISS AMENDED COMPLAINT AND GRANTING MOTION TO TRANSFER VENUE** |

In this Telephone Consumer Protection Act ("TCPA") suit, Plaintiff Jacqueline Jackson ("Jackson") brings a class action against Defendant Euphoria Wellness, LLC ("Euphoria"), a Nevada company that owns and operates a Las Vegas marijuana dispensary. Jackson alleges that Euphoria violated the TCPA by sending her and other putative class members unsolicited promotional text messages.

On July 20, 2020, Euphoria filed a motion to dismiss Jackson's Amended Complaint pursuant to Rule 12(b)(2) and 12(b)(3), or alternatively, to transfer the suit to the District of Nevada. On August 28, 2020, this Court held a motion hearing via videoconference. The Court concluded by asking Defendant's counsel to submit additional briefing on Jackson's TCPA claim that the Court then would consider before deciding Euphoria's motion to transfer venue. However, upon further reflection and review, the Court will decide both motions now. Therefore, for the reasons set forth below, this Court DENIES Euphoria's motion to dismiss, but GRANTS the Motion to Transfer Venue to the District of Nevada.

### I. BACKGROUND

#### A. Plaintiff Jacqueline Jackson

Plaintiff Jacqueline Jackson resides in San Francisco, California. FAC (dkt. 16) ¶ 13. Jackson is the subscriber and sole user of a cell phone number ending in 5026, with a California-based area code. Id. ¶¶ 21, 25. She is financially responsible for phone service to the phone number, including cellular costs and data usage incurred as a result of text messages. Id. ¶ 25. Jackson has been registered with the national Do-Not-Call Registry since 2012. Id. ¶ 26.

#### B. Defendant Euphoria Wellness, LLC

Defendant Euphoria Wellness, LLC is a Nevada company with its principal place of business in Las Vegas, Nevada. Id. ¶ 14. Euphoria was formed in 2014 "for the purpose of owning and operating marijuana establishments within the State of Nevada." Id. ¶¶ 2–3; see also MTD (dkt. 22) at 11.

Euphoria's physical locations and offices are solely in Nevada.[1] Declaration of Darlene Purdy ("Purdy Decl.") (dkt. 22-1) ¶ 8; see also MTD at 11. In 2015, Euphoria obtained a Nevada license to operate a medical marijuana dispensary in Clark County, Nevada. Purdy Decl. ¶ 4–5; see also MTD at 12. In 2017, after Nevada legalized recreational marijuana, Euphoria obtained additional licenses. MTD at 12; see also Purdy Decl. ¶ 7. These licenses allow Euphoria to sell recreational marijuana products to of-age customers who visit its Clark County dispensary and to deliver recreational marijuana products to customers within Clark County. MTD at 12–13. As a result, Euphoria alleges that it only markets its products in Nevada, specifically targeting consumers in the Las Vegas area. Id. at 13; see also Purdy Decl. ¶ 10.

As part of its marketing, Euphoria sends text messages regarding sales and promotions to telephone numbers provided to Euphoria by individuals who visited its dispensary or website. Purdy Decl. ¶ 10; see also MTD at 13. Euphoria's website contains a statement that "[p]atients from California, Arizona and anywhere else medical marijuana is legal will be able to shop at

---

[1] Euphoria has less than a 7 percent ownership interest in Euphoria Wellness MD, LLC, a Maryland company, which owns and operates a dispensary in Maryland. Purdy Decl. ¶ 12; see also MTD at 11 n.5.

2

1  Nevada dispensaries while visiting." MTD at 10; see also FAC ¶ 12; MTD Ex. 5 (dkt. 22-5)

2  (showing the relevant portion of the website). This statement is a response in the "Medical

3  Marijuana FAQ" section of the site, appearing only after a user clicks on the question that asks,

4  "Can people use medical marijuana cards from other states in Nevada?" MTD at 10; see also MTD

5  Ex. 4 (dkt. 22-4) (showing the website before a user clicks on the question).

### C. The Conflict Between the Parties

Jackson alleges that Euphoria sent "numerous" text messages to her 5026 phone number over the past year for the purpose of marketing and advertising its business and services. FAC ¶ 20–21. Examples include: "Key Lime Pie Almost 22% Only $9.99/g & $29.99 1/8 @ Euphoria! Valid 1-21-2020 While Supplies Last. Keep out of reach of children. For use by adults 21 years of age and older. http://bit.ly/buyewnv Reply STOP YV55 to cancel," "ults [sic] 21 years of age and older. http://bit.ly/buyewnv Reply STOP YV55 to cancelChem [sic] Cage 23%+ Only $10.99/g & $34.99 1/8 @ Euphoria!" and

> Happy New Year @ Euphoria! It's Summa Soaring 20s! Select Summa Strains ONLY $20.20 1/8! Also Buy 4 Summa .8g PR for ONLY $20.20 (Reg. $9.99ea)! While Supplies Last. Keep out of reach of children. For use by adults 21 years of age and older. http://bit.ly/buyewnv Reply STOP YV55 to cancel

Id. ¶ 20.

Jackson alleges that she "has never signed-up for, and has never used, Defendant's services, and has never had any form of business relationship with Defendant." Id. ¶ 24. Further, she contends that she never provided her "cellular number to Defendant through any medium" and did not "consent to receive such unsolicited text messages." Id. ¶ 23. Instead, she alleges that Euphoria used an "automatic telephone dialing system" ("ATDS"), which has the capacity to store or generate telephone numbers without human intervention, to send messages to her 5026 phone number. Id. ¶¶ 27–29. Jackson contends that she was damaged because the messages used her "residential cellular data, phone storage, and battery life," invaded her privacy, intruded upon her seclusion, and caused her to "become understandably aggravated" due to the distractions the messages caused and the time she took to investigate their source. Id. ¶ 36.

3

However, Euphoria responds that Jackson did sign up for its services.  See MTD at 9.  Euphoria asserts that, on August 27, 2015, Jackson, a California medical marijuana patient, "visited Euphoria's Las Vegas, Nevada dispensary in person, filled out Euphoria's Patient Registration Form, and voluntarily provided her cellular telephone number to Euphoria."  Id. at 9, 12.  Euphoria's Motion to Dismiss attached a copy of Jackson's Patient Registration Form.  Id. at 9 n.2; see also Purdy Decl. ¶ 14; MTD Ex. 3 (dkt. 22-3) ("Patient Registration Form").  The handwritten Patient Registration Form lists Jackson's name and California address, along with her 5026 phone number.  MTD Ex. 3.  Under "preferred contact method," both "email" and "text" are marked.  Id.  The form is signed and dated August 27, 2015.  Id.  In her Opposition, Jackson neither mentions the Patient Registration Form nor contests its validity, but reiterates that Euphoria "never bothered" to obtain her consent before sending the messages.  Opp'n at 1.  At the motion hearing, Jackson conceded that she does not challenge the authenticity of the Patient Registration Form, although she disputes its significance.

### D.     Procedural History

Jackson filed suit against Euphoria and brought claims for violations of the TCPA.  See generally Compl. (dkt. 1).  Jackson brought her claims as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of a "No Consent Class" and a "Do Not Call Registry Class."  Compl. ¶ 33.[2]  In response to Euphoria's first motion to dismiss, Jackson filed her First Amended Complaint on July 6, 2020, with substantially identical claims.[3]  See

---

[2] The First Amended Complaint defines the "No Consent Class" as: "All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message by Defendant or anyone on Defendant' behalf, to said cellular telephone number, advertising Defendant's services, without the recipients prior express consent, using the same equipment used to call Plaintiff's cellular telephone, in violation of the TCPA."  FAC ¶ 37.  The First Amended Complaint defines the "Do Not Call Registry Class" as: "All persons in the United States who from four years prior to the filing of this action (1) were sent a prerecorded message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff."  See id.

[3] Euphoria's first Motion to Dismiss also brought to Jackson's attention the Patient Registration Form.  See Original Motion to Dismiss (dkt. 11) at 9.

4

generally FAC. Euphoria now moves to dismiss the First Amended Complaint, arguing that the Court lacks personal jurisdiction and that venue is improper. MTD at 2. Alternatively, Euphoria moves to transfer venue to the District of Nevada. Id. Jackson filed a response in opposition to Euphoria's motion, see Opp'n (dkt. 23), and Euphoria filed a reply, see Reply (dkt. 24).

## II. DISCUSSION

### A. Euphoria's Motion to Dismiss

In its Motion to Dismiss, Euphoria first argues that this Court lacks personal jurisdiction, and then argues that venue is improper.

#### 1. Legal Standard

##### a. Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant. Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir. 1984). In assessing whether personal jurisdiction exists, the court may consider evidence presented in affidavits or order discovery on jurisdictional issues. Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). "When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). A prima facie showing is established if the plaintiff produces admissible evidence which, if believed, would be sufficient to establish personal jurisdiction. See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clemens Ltd., 328 F.3d. 1122, 1129 (9th Cir. 2003). "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010).

##### b. Venue

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss an

action based on improper venue. Once a defendant challenges venue, the plaintiff bears the burden of demonstrating that venue is proper. Technology Credit Corp. v. N.J. Christian Academy, Inc., 307 F. Supp. 3d 993, 1001 (N.D. Cal. 2018). In determining venue, a court need not accept the pleadings and can consider facts outside of the pleadings. See Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009). If a court finds that venue is improper, it must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

In a civil action, venue is proper: (1) in a judicial district in which any defendant resides, (2) in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) "in a judicial district in which any defendant is subject to the court's personal jurisdiction" if there is no district in which an action may otherwise be brought. See 28 U.S.C. § 1391(b)(1)–(3).

    **2.**    **Analysis**

        **a.**    **Personal Jurisdiction**

Euphoria's first argument for dismissal is that the Court lacks personal jurisdiction. See MTD at 15. Personal jurisdiction can be either general or specific. Data Disc, 557 F.2d at 1287. Euphoria argues that the Court lacks both general jurisdiction and specific jurisdiction, see MTD at 15, and Jackson does not contest that this Court lacks general jurisdiction, see generally Opp'n. The question is therefore whether the Court has specific jurisdiction.

"There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017) (original alterations omitted). The plaintiff has the burden to prove the first two prongs, and for

6

the third, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 802 (9th Cir. 2004).

Euphoria argues that this Court lacks specific jurisdiction for three reasons. First, Euphoria argues that Jackson cannot meet her burden of establishing purposeful direction or availment. Second, Euphoria argues that Jackson cannot meet her burden of establishing that her claim arises out of Euphoria's forum-related activities. And third, Euphoria argues that it would be unreasonable for this Court to exercise jurisdiction.

### i.  Purposeful Availment/Direction

Purposeful direction analysis most often applies to tort claims, while purposeful availment analysis most often applies to contract claims. Schwarzenegger, 374 F.3d at 800–02. Because "TCPA actions are essentially tort claims," purposeful direction analysis is appropriate here. See Komaiko v. Baker Techs., Inc., No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 70162, at *16 (N.D. Cal. Apr. 20, 2020) (internal punctuation omitted); see also MTD at 17–18; Opp'n to MTD at 4–5 (same).

To determine whether the purposeful direction requirement is met, courts apply the three-pronged "effects test" enunciated in Calder v. Jones, 465 U.S. 783, 787–90 (1984). Under the effects test, a plaintiff must show that a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Axiom Foods, Inc., 874 F.3d at 1069.

In its Motion to Dismiss, Euphoria argues that Jackson cannot meet her burden of establishing facts to satisfy the second and third prongs of the test.[4] See MTD at 18. Euphoria argues that the second prong is not met because it did not market its products in California, citing restrictions that allow the dispensary to serve only in-person customers who visit the store physically or delivery customers residing in Clark County. See MTD at 13, 19. Euphoria

---

[4] Euphoria concedes that "the first prong of the test is satisfied by Euphoria allegedly sending a text message to Plaintiff." MTD at 18.

contends that language like "While supplies last" in its promotional texts further demonstrates that its marketing was "explicitly designed to target Las Vegas customers" who are presumably close enough to visit the dispensary before supplies run out. See MTD at 19. Euphoria further argues that the test's third prong is not met because Euphoria had no reason to believe that it would be hauled into court in California when it "strenuously attempted to avoid any advertising or business outside of Nevada" to comply with Nevada's marijuana regulations. See id.

Jackson maintains that the second and third prongs are met. Her argument is that by sending promotional text messages to a California number, Euphoria expressly aimed its conduct at California and caused harm that the company reasonably knew, because of the number's California area code, would likely be suffered in that state. See Opp'n at 5-8. Jackson contends that it is enough that Euphoria "deliberately sent spam messages to a telephone number with a California area code" and that those messages form the basis of her complaint. See id. at 6.

Euphoria's Reply makes much of Walden v. Fiore, 134 S. Ct. 1115, 1126 (2014), in which the Supreme Court found that the "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." See Reply to Opp'n at 3. Euphoria argues that under Walden, it cannot be enough that Euphoria's messages happened to be sent to a California number because "[j]ust like in Walden, Plaintiff's alleged harm is not sufficiently linked to Plaintiff's residence. Plaintiff would have experienced this same harm had she lived in Mississippi, Utah, or wherever else she actually resided after providing her telephone number to Euphoria." But Walden is distinguishable. In that case, the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to [the forum state]"—the plaintiffs simply happened to live there. See 134 S. Ct. at 1125 (emphasis added). Here, unlike Walden, the crux of the case is text messages that the defendant sent to a forum-state area code.

Euphoria is also correct that "[c]ourts have not . . . simply found the connection between a phone number's area code and an actual geographic area establish per se personal jurisdiction over the sender in the judicial district corresponding to that area code." Reply to Opp'n at 4–5. But that no per se rule exists does not mean that the Court should not find personal jurisdiction here.

8

1    Euphoria cites two recent TCPA cases in which California district courts granted motions to
2    dismiss for lack of personal jurisdiction: Menichiello v. Ascend Funding LLC, No. SACV 17-
3    00609 AG (KESx), 2017 U.S. Dist. LEXIS 142554 (C.D. Cal. Aug. 28, 2017) and Abedi v. New
4    Age Med. Clinic PA, 2018 U.S. Dist. LEXIS 105932, 2018 WL 3155618 (E.D. Cal. June 25,
5    2018). Reply to Opp'n at 4–5. But in Menichiello, the purposeful direction test was not satisfied
6    because a third-party agency, not the defendant, had sent the allegedly violative communications
7    to the plaintiff. See 2017 U.S. Dist. LEXIS 142554, at *9. And in Abedi, the plaintiff resided in
8    California but had a New Jersey area code, a factor of "critical importance" that the court used to
9    conclude that the defendant, a New Jersey weight-loss clinic, had no reason to know that "its text
10   messages [to the plaintiff] were sent into California." 2018 U.S. Dist. LEXIS 105932, at *11.
11   Here, unlike Menichiello, Euphoria does not contest that it was the entity that sent the text
12   messages, and unlike Abedi, Jackson's area code corresponds with the forum state.
13       For her part, Jackson cites numerous district court TCPA cases from throughout the Ninth
14   Circuit to argue that the second and third prongs of the purposeful direction test can be satisfied
15   solely on the basis of Euphoria's messages to a California number. See Opp'n at 5 (citing
16   Komaiko v. Baker Techs., Inc., No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 70162, at *19
17   (N.D. Cal. April 20, 2020) ("In TCPA actions, courts have consistently held that the second and
18   third prongs of the Calder test are satisfied when defendants contact numbers with area codes
19   associated with that state."); Luna v. Shac, LLC, No. C14-00607 HRL, 2014 U.S. Dist. LEXIS
20   96847, at *11 (N.D. Cal. July 14, 2014) ("where [defendant] intentionally sent text messages
21   directly to cell phones with California based area codes, which conduct allegedly violated the
22   TCPA and gave rise to this action, [defendant] expressly aimed its conduct at California" and
23   "knew that the alleged harm caused by the text messages it sent to California cell phones was
24   likely to be suffered in California"); see also Moser v. Health Ins. Innovations, Inc., No. 3:17-cv-
25   1127-WQH-KSC, 2018 U.S. Dist. LEXIS 3237, at *11 (S.D. Cal. Jan. 5, 2018) ("The effects test
26   is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by calling
27   a phone number with a forum state area code")).
28       Euphoria's counterargument that Luna and other cases Jackson relies on were decided pre-

Walden and are therefore no longer relevant overstates Walden's holding, as discussed above. Further, Euphoria's contention that Jackson's post-Walden cases "are distinguishable because the plaintiff and out-of-state defendant lacked any prior business relationships and plaintiff was usually contacted through blitz campaigns seeking new business" is literally correct, but that distinction is not relevant for the purpose of purposeful direction analysis. See Reply at 7. Rather, this fact seems to strengthen Jackson's case that Euphoria had "reason to know that [its] conduct would be felt in California." See Komaiko, 2020 U.S. Dist. LEXIS 70162, at *19.

For one thing, Euphoria indicated on its website's "Medical Marijuana FAQ" that it could serve out-of-state patients, including patients from California. See MTD Ex. 5. That fact by itself is not particularly significant, but here, the Patient Registration Form that Jackson apparently submitted to Euphoria during her in-person visit also appears to show that she provided Euphoria with both her California phone number, and a home address in California. See MTD Ex. 3.[5] The inclusion of the California phone number with a corresponding California address in the Patient Registration Form demonstrates that Euphoria had more than "mere knowledge of the statistical probability that its activities will have some impact in California." See id.; Reply at 9. Rather, because Euphoria agrees that it "send[s] messages regarding sales and promotions to specific telephone numbers . . . [provided] by individuals who visited" its dispensary, Purdy Decl. ¶ 10, Euphoria had more than mere knowledge that its messages could have an impact in California, but an actual basis for knowing that those messages in fact would have such an impact when out-of-state visitors who provided their phone numbers, such as Jackson, received them. See Luna, 2014 U.S. Dist. LEXIS 96847, at *11 (finding the second and third prong of the personal jurisdiction test are satisfied where defendant "knew that the alleged harm caused by the text messages it sent to California cell phones was likely to be suffered in California").

Euphoria's protestations that it does not intentionally market its products in California ignores that this case is about promotional text messages, sent ostensibly for marketing purposes,

---

[5] In assessing whether personal jurisdiction exists, the Court may consider evidence beyond the declarations presented in affidavits. Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).

to an out-of-state customer who resides in California with a corresponding forum area code. Because Euphoria had reason to know that this customer resided in California—both because of her California area code and her California address—and intentionally sent promotional messages to her forum-state phone number, Euphoria also had reason to know that any harms caused by the messages would likely be felt in California. This Court therefore finds that the first prong of the test for specific jurisdiction is met because all three prongs of the purposeful direction "effects test" are satisfied.

### ii.     Forum-Related Activities

The Ninth Circuit has described the second prong of the specific direction test as a "but for" test that is satisfied if a direct nexus exists between a defendant's contacts with the forum state and the cause of action. Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.), 715 F.3d 716, 742 (9th Cir. 2013).

Euphoria simply argues that it has no forum-related activities in California. See id. Although Euphoria may be correct that the messages it allegedly sent to Jackson were drafted and sent from Nevada, that does not mean that those activities were unrelated to the forum of California. Jackson's "claims would not have arisen but-for Defendant's transmission of the text messages." See Opp'n at 9. This Court therefore finds that Jackson has met her burden sufficient to meet the second prong of the specific jurisdiction test.

### iii.    Reasonableness

In evaluating reasonableness, the Ninth Circuit balances seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007).

Euphoria argues that all factors weigh in favor of Euphoria except the third factor, which is "neutral." See MTD at 19–24. Euphoria's main arguments are that it has not purposefully

11

1  interjected itself into California given its "studious[] attempt[s] to remain within Nevada" to
2  comply with state marijuana rules, maintaining that it only intended its advertisements to target
3  Las Vegas customers. See MTD at 20. Euphoria further argues that, as a Nevada company with
4  witnesses and evidence in Nevada, litigating the case in California would be burdensome,
5  expensive, and inefficient. See MTD at 20–23. Finally, Euphoria argues that because federal
6  courts do not have jurisdiction over non-resident class members, it could be forced to litigate an
7  identical suit in Nevada, creating an additional burden. See id.

8  Jackson counters that the burden that Euphoria, "a Nevada LLC doing business in the state
9  adjacent to California who has retained counsel with a California office," would incur litigating
10 the case in California is not "so gravely difficult and inconvenient that [it would be] at a severe
11 disadvantage in comparison to [Plaintiff]." Opp'n at 10 (quoting Burger King Corp. v.
12 Rudzewicz, 471 U.S. 462, 478 (1985)). Jackson also notes that because the TCPA is a federal
13 statute, a Nevada court should have no greater interest in hearing the case than one in California.
14 Id. at 11.

15 Where "[Defendants] may be able to show that the exercise of jurisdiction might be
16 unreasonable, but the closeness of the question manifests that they cannot do so in a compelling
17 fashion . . . [defendants] do[] not surmount their hurdle." Roth v. Garcia Marquez, 942 F.2d 617,
18 625 (9th Cir. 1991). Jackson persuasively challenges Euphoria's contention that six of seven
19 factors are in its favor, especially given Euphoria's high burden at this stage.

20 Jackson cites to j2 Global Communications, Inc. v. Blue Jay, Inc., No. C 08-4254 PJH,
21 2009 WL 29905 (N.D. Cal. Jan. 5, 2009), in which the court determined that jurisdiction was
22 reasonable over a Nevada corporate defendant in a TCPA suit. Opp'n at 15. The court deemed
23 the majority of the reasonableness factors to be neutral or in favor of the plaintiff. See j2 Global
24 Communications, Inc., No. C 08-4254 PJH, 2009 WL 29905, at *29-30. Most significantly, the
25 court found that because litigation in each party's preferred venue would impose a burden on the
26 other party, the burden that the defendant would incur by litigating in the Northern District of
27 California did not rise to the level of substantiating a "compelling case" for unreasonableness. See
28 id. Moreover, the defendant's purposeful availment into California was sufficient to show its

"purposeful interjection into the forum state." See id. Here, litigation in either party's preferred venue would burden the other party (and the Court will address the significance of that burden in connection with Euphoria's motion to transfer venue, where the standard differs). Euphoria cannot argue that it did not purposefully interject itself into the forum state where purposeful direction is satisfied. See id.

Because defendants must generally meet a high bar to demonstrate that the exercise of jurisdiction is unreasonable, and because Euphoria has not compellingly surmounted that hurdle, the Court finds that jurisdiction would be reasonable in this instance.

### b.     Venue

Euphoria contends that venue is improper because all events besides Jackson's alleged receipt of the text messages occurred in Nevada, including Jackson's alleged visit to the dispensary, Euphoria's collection of her phone number, and Euphoria's alleged decision to send the messages. See MTD at 24. Jackson counters that if specific jurisdiction is proper on the basis of Euphoria having sent messages to a California number, so too is venue. See Opp'n at 13. The Court cannot say that the receipt of unwanted text messages is not a substantial part of the events giving rise to a TCPA claim. See 28 U.S.C. § 1391(b)(1)–(3). Accordingly, venue is proper.

### 3.     Conclusion as to Motion to Dismiss

The Court therefore concludes that there is personal jurisdiction over Euphoria and that venue is proper in the Northern District of California.

## B.     Euphoria's Alternate Motion to Transfer Venue

Euphoria has also filed an alternate motion to transfer venue to the District of Nevada. For the reasons stated below, this Court grants the motion.

### 1.     Legal Standard

A district court may transfer the venue of an action "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Courts have discretion to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (internal

13

1    quotations and citations omitted).  A motion to transfer should not merely shift the inconvenience
2    from the moving party to the opposing party.  See Decker Coal Co. v. Commonwealth Edison Co.,
3    805 F.2d 834, 843 (9th Cir. 1986).  Rather, to prevail on a motion to transfer, a moving party must
4    establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one
5    where the action might have been brought; and (3) that the transfer will serve the convenience of
6    the parties and witnesses and will promote the interests of justice.  See Goodyear Tire & Rubber
7    Co. v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992).

        When considering a motion to transfer venue, a court may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  Jones, 211 F.3d at 498–99.

### 2.   Analysis

Euphoria argues that the Court should transfer venue to the District of Nevada because the company, its participant witnesses, and its evidence (including physical evidence in paper form) are all based in Nevada, as are most putative class members.  See MTD at 25; FAC ¶ 37 (defining both classes as including "[a]ll persons within the United States who . . ."); Purdy Decl. ¶ 10 ("Euphoria markets its products in Nevada only.").  Jackson counters that the Court should defer to her choice of forum and that Euphoria has not provided adequate support for its assertion that Nevada-based witnesses and evidence would be difficult to access in the Northern District of California.  See Opp'n at 14–15.

Neither party disputes that venue would be proper in the District of Nevada or that Jackson might have brought her action there.  See generally Opp'n.  The dispute is therefore whether Euphoria has met its burden of demonstrating that transfer "will serve the convenience of the parties and promote the interests of justice."  See Goodyear Tire & Rubber Co., 820 F. Supp. at

506. Applying the Ninth Circuit's factors in Jones, transfer to the District of Nevada would accomplish these goals. See 211 F.3d at 498–99.

### a. Contacts Between Parties, Cause of Action, and Chosen Forum

Three Jones factors center on the contacts between the parties, the cause of action, and the chosen forum: "(1) the location where the relevant agreements were negotiated and executed . . . (4) the respective parties' contacts with the forum, [and] (5) the contacts relating to the plaintiff's cause of action in the chosen forum . . . ." 211 F.3d at 498–99; see also Barnes & Noble, Inc. v. LSI Corp., 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011) ("[C]ourts in this District have commonly articulated the relevant factors as follows . . . convenience of the parties . . . any local interest in the controversy . . . .").

The bulk of the events that comprise this case took place in the District of Nevada, including Jackson's visit to the dispensary, where she completed the Patient Registration Form. See MTD Ex. 3. Jackson does not dispute that she visited the dispensary or completed the Patient Registration Form. See generally Opp'n. Whereas Jackson has visited Euphoria, in the District of Nevada, at least once, Euphoria has no physical ties to the Northern District of California and "only has physical locations and offices within Clark County, Nevada." Purdy Decl. ¶ 8. The sole event in this case that touches the Northern District of California is Jackson's receipt of the promotional texts. Everything else in this case (including Euphoria's dispensary, offices, and marketing personnel) is based in the District of Nevada, so these factors favor Euphoria.

### b. Plaintiff's Choice of Forum

The plaintiff's choice of forum is another factor to consider when transferring venue for convenience. See Jones, 211 F.3d at 498–99. Generally, courts give "great weight" to a plaintiff's choice of forum, especially when there are strong contacts between the chosen forum and the dispute. See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). However, "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." Id. Jackson's choice of forum is the Northern District of California, so this factor does weigh in her favor, but not significantly because there are not strong contacts with the

15

chosen forum, and because she seeks to represent a nationwide class.

      **c.**  **Availability of Witnesses and Evidence, and Litigation Costs**

    Courts also consider access to witnesses and evidence when weighing the convenience of a forum. See Jones, 211 F.3d at 498–99 (analyzing "(7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof" in motion for venue transfer). Some courts consider "[t]he paramount consideration in determining whether to transfer venue [to be] convenience to material witnesses." Wilson Daniels, Ltd. v. Decanter Imports, Inc., No. C–93–1635 SAW, 1993 WL 361694, at *2 (N.D. Cal. Sept. 2, 1993) (citing Los Angeles v. National Football League, 89 F.R.D. 497, 501 (C.D. Cal. 1981)). A second factor related to this consideration is "(6) the differences in the costs of litigation in the two forums" when determining whether to transfer venue for convenience. Jones, 211 F.3d at 498–99.

    Euphoria "only has physical locations and offices within Clark County, Nevada." Purdy Decl. ¶ 8. Euphoria does not have California employees. Id. ¶ 9. Euphoria contends that most of its evidence is in paper form, which would also increase the burden of litigation in the Northern District of California. See MTD at 25. Further, "most, if not all of Euphoria's participant witnesses reside in Nevada," and litigation in the Northern District of California would inconvenience them. See id. Specifically, any Euphoria employees involved in the decisions to send text messages to prospective customers will likely be located in Nevada because Euphoria markets its products "specifically to consumers in the Las Vegas area" and "does not intentionally market its consumer products outside of the State of Nevada." Purdy Decl. ¶ 10. Although Defendant's counsel acknowledged at the motion hearing that he was not certain of the precise composition of the putative class, this Court is persuaded, based on Euphoria's location, business model, and regulatory constraints, that Nevada residents will comprise the bulk of the class. Id. Indeed, all of Euphoria's customers must either physically visit its Las Vegas storefront (to make in-person purchases) or reside in Las Vegas residences (to qualify for delivery purchases). Id.[6]

---

[6] Euphoria's counsel added at the motion hearing that Euphoria may not deliver its products to

16

The Court appreciates Jackson's counsel's offer, at the motion hearing, to conduct remote depositions to alleviate the burden of travel for Euphoria's Nevada witnesses. This gesture, however, would not negate the time and expense for those witnesses inherent in participating in a trial in the Northern District of California.

Accordingly, these factors weigh in Euphoria's favor.

### d.    **Familiarity with Governing Law**

The final factor the Court may examine is the proposed venue's familiarity with governing law. See Jones, 211 F.3d at 498–99 (weighing "the state that is most familiar with the governing law" in motion for venue transfer). Because the TCPA is a federal statute, neither venue has more familiarity with the law. This factor is neutral.

### 3.    **Conclusion as to Motion to Transfer Venue**

In sum, because most putative class members likely reside in Nevada, along with all of the witnesses and evidence other than Jackson and her cell phone (and because Jackson's Patient Registration Form might represent an insurmountable hurdle to her claim in this case), Euphoria has overcome its burden in showing that a transfer of venue would serve the interest of convenience for the parties. See 28 U.S.C. § 1404(a).

## III.   CONCLUSION

For the foregoing reasons, this Court DENIES Euphoria's motion to dismiss and GRANTS Euphoria's alternate motion to transfer venue to the District of Nevada.

**IT IS SO ORDERED.**

Dated: September 8, 2020



CHARLES R. BREYER
United States District Judge

---

hotels, further underscoring that Euphoria targets Clark County residents.

17